ANTONIO DEBIÉN, JR., Plaintiff and Appellee, v. BOARD OF ACCOUNTANCY, ETC., Defendant and Appellant.

No. 11023. Argued November 23, 1953.—Decided February 24, 1954.

92

*José Trías Monge, Attorney General,* and *Omar Cancio Sifre, Assistant Attorney General,* for appellant. *Canales & Segarra* for appellee.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

Antonio Debién, Jr., filed on November 23, 1945 a petition with the Board of Accountancy of Puerto Rico request-

ing the Board to register him as a public accountant, and issue to him a license pursuant to the provisions of §§ 6 and 8 of Act No. 293 of May 15, 1945 (Sess. Laws, p. 1098), known as the "Public Accountancy Act of Puerto Rico." The Board rendered a decision denying the petition on the ground that the applicant was not engaged in the practice of public accountancy as his principal occupation on the date fixed in the Act. The petitioner filed a motion for reconsideration on November 22, 1949. Finally, a hearing was held before the Board on August 27, 1952, at which petitioner testified and offered in evidence several affidavits and other documentary evidence. On November 26, 1952, the Board rendered a decision denying the motion for reconsideration, stating in part as follows:

"The fresh testimony given by petitioner and the evidence offered disclose that Mr. Debién was employed with the firm 'Tybor Stores, Inc.' for a period of approximately three years, and that he devoted the greater part of the regular working hours to the discharge of functions as employee of that firm.

"In view of the foregoing, the Board is of the opinion that Antonio Debién, Jr., was not, on the date of enactment of Act No. 293 of 1945, engaged in the practice of public accountancy but of private accountancy as his principal occupation."

Notice of that decision was served on petitioner on December 3, 1952.

On December 23, 1952 petitioner filed in the San Juan Part of the Superior Court a petition for mandamus against the Board, requesting that the Board be directed to register and issue to plaintiff-petitioner a certificate as public accountant, pursuant to the provisions of Act No. 293 of May 15, 1945.

On January 30, 1953 the Board filed a motion for dismissal or for summary judgment on the ground that the petition "did not state facts sufficient to constitute a cause of action," or, alternatively, because there was no issue of fact, since the facts had been examined administratively

before the Board and the only question raised in the petition for mandamus was whether or not the decisions of the Board were supported by substantial evidence, there being only a question of law. The lower court overruled defendant's motion on the ground that, in its opinion, the petition for mandamus was considered a petition for review, as was done in *Rivera* v. *Chancellor of the University*, 73 P.R.R. 361, and that the applicable proceeding was the writ of review provided in § 11(j) of the Public Accountancy Act and not Rule 56 of the Rules of Civil Procedure.

Subsequently, the record containing the administrative record, namely, the proceedings had before the Board, were sent up to the San Juan Court and the case submitted by memorandum of the parties.

On April 9, 1953 the lower court rendered its opinion and judgment granting the petition for mandamus, directing the Board to register petitioner's name as a public accountant and to issue him a license to work as such. The Board appealed to this Court assigning the following errors:

"1. The lower court erred in overruling the motion to dismiss, or, alternatively, to render summary judgment in favor of the respondent Board.

"2. The lower court erred in deciding that the Board of Accountancy is without discretion to refuse registration as public accountant, under the provisions of § 6 of Act No. 293 of 1945.

"3. The lower court erred in deciding that the judgment rendered in *Francisco Martínez Medina* v. *Board of Accountancy*, Mandamus, Civil No. 49–2624, is applicable to this petition.

"4. The lower court erred in not limiting its reviewing function to the record of the administrative proceedings in order to determine whether the Board's finding of fact was supported by substantial evidence, thereby disturbing the conclusion or determination of fact of that administrative body.

"5. The lower court erred in not deciding that the administrative record contains substantial evidence to support the finding or determination of fact of that administrative agency."

██ It is unnecessary to decide whether or not the San Juan court was in error in overruling the motion for summary judgment, since the court ultimately considered and decided the case on its merits, and this Court will do likewise. However, the respondent Board argued before the lower court, and now before us, that (1) the petition for review provided in § 11(j) of the said Act is not applicable to a decision refusing a license, and (2) that for that proceeding there may not be substituted a petition for mandamus in view of the circumstances of this case. Section 11 of the Public Accountancy Act of 1945 provides as follows:

"Section 11.—*Hearings Before Board. Procedure. Notice. Review.*— (a) *Commencement of Proceedings.*—The Board may institute proceedings under this Act, either *motu proprio* or on the complaint of any person.

"(b) *Notice.—Service and Contents.*—A written notice of the nature of the charge or charges against the accused and of the time and place of the hearing on such charges to be held before the Board shall be served on the accused at least 30 days in advance of the date of said hearing, either personally or by sending him a copy thereof by registered mail to his last address known to the Board.

"(c) *Failure to Appear.*—If, after having been notified of the hearing, as provided for herein, the accused fails to appear and defend, the Board may proceed to hear the evidence against him and may enter such order as may be justified by the evidence, which order shall be final unless the accused petitions for a review thereof, as provided herein; *Provided, however,* That within the 30 days following the date of any order, the Board may, upon a showing a good cause for failing to appear and defend, reopen said proceedings and permit the accused to submit evidence in his behalf.

"(d) *Counsel, Witnesses, Cross-examination.*—At any hearing the accused may appear in person and by counsel, produce evidence and witnesses on his own behalf, cross-examine witnesses, and examine such evidence as may be produced against him. The accused shall be entitled, on application to the Board, to the issuance of subpoenas to compel the attendance of witnesses in his behalf.

"(*e*) *Subpoenas. Oaths.*—The Board, or any member thereof, may issue subpoenas to compel the attendance of witnesses and the production of documents, and may administer oaths, take testimony, hear evidence and receive exhibits in evidence in connection with or upon hearing under this Act. In case of disobedience to a subpoena the Board may invoke the assistance of any court of Puerto Rico in requiring the attendance and testimony of witnesses and the production of documentary evidence.

"(*f*) *Evidence.*—The Board shall not be bound by technical rules of evidence.

"(*g*) *Record.*—A stenographic record of the hearing shall be taken and a transcript thereof shall be filed with the Board.

"(*h*) *Attorney for the Board.*—At all hearings the Attorney General of Puerto Rico, or one of his assistants designated by him, shall appear and represent the Board.

"(*i*) *Decision.*—The decisions of the Board shall be by a majority vote.

"(*j*) *Review by Court.*—Any person adversely affected by any order of the Board may obtain a review thereof by filing a written petition for review with the corresponding district court within 30 days after the entry of said order. The petition shall state the grounds upon which the review is asked and shall pray that the order of the Board be modified or set aside in whole or in part. A copy of such petition shall be forthwith served upon any member of the Board and thereupon the Board shall certify and file in the court a transcript of the record upon which the order appealed from was entered. The case shall then be tried *de novo* on the record but the parties shall be permitted to file briefs as in an ordinary action at law. The court may affirm, modify or set aside, in whole or in part, the order of the Board, or it may remand the case to the Board for further evidence, and may, in its discretion, stay the effect of the order of the Board pending its determination of the case. The decision of the court shall have the force and effect of a decree in equity."

Although most of § 11 refers to proceedings involving complaints and revocation of licenses, still subdivision (j) grants the power of review by the court to any person adversely affected by "any order of the Board." Sub-

division (j) is of a general character and, although embodied in § 11 which deals mostly with certain specific proceedings, that subdivision should be regarded as applicable to orders refusing licenses. Petitioner herein filed a petition for mandamus, but it should be considered as a petition for judicial review and, hence, unchallengeable, especially considering the fact that the petition for mandamus was filed in the San Juan court within the period of thirty days provided in subdivision (j) to apply for review of an order of the Board.

██ Regarding the intrinsic merits of this case, § 6 of the Public Accountancy Act provides as follows:

"Section 6.—*Public Accountants; Registration Thereof.*— Any person (*a*) who is a resident of Puerto Rico, or has a place of business, or is employed therein, (*b*) who has attained the age of twenty-one years, (*c*) who enjoys a good moral conduct, and (*d*) who meets the requirements of subdivision (1) or (2) of this Section, may register as a public accountant with the Board on or before the 30th day of November, 1945.

"(1) Persons who on the date this Act is approved may hold themselves out to the public as public accountants and who are engaged within this Island in the practice of public accountancy as their principal occupation; *Provided,* That all such persons as on the date of the approval of this Act shall have practiced the profession of accountancy at the service of the Government of Puerto Rico in functions as auditor, accountant, inspector or examiner of accounts for a period of not less than five years, shall be covered by the provisions of this Section.

"(2) Persons serving in the armed forces of the United States or any of the United Nations, who immediately prior to entering such service held themselves out to the public as public accountants and were engaged in the practice of public accountancy as their principal occupation. In the case of any such person serving in the armed forces of the United States or any of the United Nations on the date this Act takes effect, the term for registration shall be extended for a period of twelve months from the time such person is honorably discharged from service.

."Every person who is so registered and who holds a permit issued under Section 8 of this Act shall be styled and known as a 'public accountant.'"

Section 8 provides, in part, that the Board shall issue permits to engage in the practice of public accountancy in Puerto Rico to every person registered under § 6.

The above-quoted provisions do not define specifically the term "public accountant," although the language employed shows that it refers to "every person who holds himself out to the public" as a public accountant. In the case at bar, the Board refused the petition on the ground that petitioner was in the employ of the firm Tybor Stores, Inc., for a period of three years, devoting the greater part of the regular working hours to the discharge of his functions as an employee of that firm, and that, therefore, he was not engaged in the practice of public accountancy but in the practice of private accountancy, as his principal occupation. Evidently, the Board defined "public accounting" as engaging in the practice of accounting as a professional, and not as an employee, and since petitioner's principal occupation was his work as an employee, he did not meet the requirements of § 6, even though his work was that of an accountant. It is necessary, at the outset, to become aware in general terms of the scope and extent of the powers of the Board in respect to the granting or refusal of licenses to prospective public accountants. The metes and bounds of such administrative powers shall be the keystone or foundation for determining the need, extent and scope of any possible writ of review.

We are concerned here with licenses regulated by the State. The Legislature has validly delegated to a Board the power to grant or refuse such licenses, and, like other administrative agencies, the Board should have ample discretionary powers to weigh the relevant facts and factors particularly in view of the experience and specialized knowledge of the members of that agency. Generally, an adminis-

trative board may be invested with discretion to ascertain and determine the qualifications and conditions of applicants for licenses, as well as the facts and conditions required by the statute, and to determine whether the legal provisions have been complied with, in accordance with the generally accepted meaning of the statutory terms. 33 Am. Jur. 377, 378, 379. The legislature lays down general standards of such breadth as to give the administrator leeway for his expert judgment, the agency being permitted to develop within an area of administrative analysis, appreciation and discretion, provided that discretion rests on a basis of reasonableness. *Secretary of Agriculture* v. *Central Roig Co.*, 338 U.S. 604, 611; *Gray* v. *Powell*, 314 U.S. 402, 412; *Board* v. *Hearst Publications*, 322 U.S. 111; *Board of Governors* v. *Agnew*, 329 U.S. 441; 58 *Harv. L. Rev.* 70, *Review of Findings of Administrators, Judges, and Juries: A Comparative Analysis.* However, the judicial respect for the relative freedom of action of administrators cannot go so far as to lead to passive indifference and total complacency. The "desideratum" of administrative autonomy does not warrant absolute independence from judicial interference. The sphere of discretion must be within legal bounds. Administrative discretion is not absolutely unlimited. The discretion of a board must rest on a rational basis in the evidence. The decisions of a board as respects the granting or refusal of licenses cannot be arbitrary, capricious, fraudulent or without factual basis. 33 Am. Jur. 379; *McDonough* v. *Goodell*, 13 Cal. 2d 741; *Riley* v. *Chambers,* 181 Cal. 589; *Jaffarian* v. *Murphy*, 183 N.E. 110; *Hazel Park Racing Ass'n.* v. *Inglis*, 58 N.W. 2d 241; *American Committee on Maternal Welfare* v. *Mangan*, 14 N.Y.S. 2d 39, affirmed in 27 N.E. 2d 278; *Farrand* v. *State Medical Board*, 85 N.E. 2d 113. Application of the test of reasonableness prevails in the exercise of administrative discretion. 62 Harv. L. Rev. 1058, 1059.

It follows from the general discussion above that the definition of the legal term or concept "public accountancy" which the Board may have adopted, is not binding upon the courts, and that the decision of the Board in that respect can be rendered ineffective by the courts if the administrative definition, applied to the facts of the case, is contrary to the true meaning of that term or concept, it being a relevant function of the courts to determine the genuine meaning.

Clearly, a "public accountant" is one who holds himself out to the public as an accountant, that is, one who has the fitness and power to render his services as accountant to different persons or the general public. The fact that he renders the greater part of his services and devotes the greater part of his time to a single employer, does not exclude the possibility that he *may* also render services to other persons. The requirement of § 6 that the principal occupation of a particular applicant be that of a "public accountant," means that that should be his principal ability and that he must be engaged, most of his time, in the work of an accountant and not in a dissimilar or different occupation, as for example, that of an engineer or physician. We cannot overlook the fact that an accountant of recognized competence may devote the greater part of his time and effort to a single employer. This does not imply that his principal occupation is not that of a public accountant. That employer-client who receives the greater part of his attention as accountant is also a part of the public. The term "principal occupation" does not require a general distribution of an accountant's time and work.

Petitioner herein testified personally before the Board and offered several affidavits. It is unnecessary to discuss the probatory value or efficacy of those affidavits, since they served merely to corroborate petitioner's oral testimony. It is also admitted in this case that petitioner's

duties were those of an accountant. The question is whether they were those of a public accountant. Petitioner testified, among other things, that he was treasurer of Tybor Stores, Inc., in charge of all the accounting that he established accounting systems, audited accounts, set up profit and loss statements, income-tax returns, financial reports that he worked 40 hours a week and 8 hours a day for Tybor, and received the greater part of his income from Tybor. But petitioner further testified that he also had other clients (about 10) to whom he likewise rendered his services as accountant, the nature of that work being similar to that rendered to Tybor. Petitioner mentioned the names of all those clients. He further testified that Tybor had authorized him to render accounting services to those other clients, and that such authorization was part of the work agreement between him and Tybor.

Assuming that petitioner was an employee of Tybor, as a question of fact he rendered accounting services to other clients, namely, the public. He was authorized by Tybor to render services as an accountant to the rest of the public, besides Tybor. He was not bound under a contract to render services exclusively to Tybor; in other words, he had the fitness and power to render accounting services to the public and, as a question of fact, he did render services to the public. His principal occupation was to offer his services to the public.

In view of the above, the Board did not act in conformance with § 6 of the Public Accountancy Act, and applied to the facts of the instant case an incorrect definition of the provisions of § 6. Its decision lacked a rational basis in the evidence.

In *Frazer* v. *Shelton*, 150 N.E. 696, an Illinois statute specifically defined the term "public accountancy" as the rendering of accounting services to more than one employer. No such specific statutory definition exists in Puerto Rico,

and, in any event, in the case at bar the petitioner had many clients. In *Roberts* v. *Hosking*, 28 P. 2d 199, the Montana statute defines the term "public accountant" as one who offers his services to the general public. It is held that such statutory provision applies only to those accountants who make a business of serving any member of the public in need of such service, and not to those employed in a single business enterprise. The case cited is different from the case at bar and does not apply to the facts herein.

The judgment appealed from is affirmed.

Mr. Chief Justice Snyder, Mr. Justice Negrón Fernández and Mr. Justice Sifre dissented.